IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

STEVEN E TILLMAN,

      Plaintiff,

v.                                  Case No. 1:17-cv-204-MW-GRJ

ASHLEY SIMON, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on ECF No. 22, Plaintiff's *pro se* second amended complaint.

      Plaintiff brings this case under 28 U.S.C. § 1331 and 42 U.S.C. § 1983. His claims arise from a state court foreclosure proceeding that ended unfavorably to Plaintiff. In this action, Plaintiff is challenging the state court's judgment of foreclosure. In an attempt to circumvent the challenge to the state court foreclosure judgment Plaintiff cobbles together allegations against a variety of unrelated defendants in an attempt to fashion a RICO[1] claim. Plaintiffs names seventeen separate defendants, including *inter alia,* five circuit court judges from the Eighth Judicial Circuit

---

[1] 18 U.S.C. §§ 1961–68, the Racketeer Influenced and Corrupt Organizations Act ("RICO Act").

in and for Alachua County, Florida, six lawyers, who represented the mortgage holder, the bank, which foreclosed on Plaintiff's mortgage and the electronic transfer company responsible for handling electronic transfers of mortgage documents. The primary problem with Plaintiff's complaint is that he is attempting to use the federal courts for challenging the state court foreclosure judgment rather than limiting his challenges to the state appellate courts. In addition to the fact that federal court is not a proper forum for Plaintiff's challenges, Plaintiff's RICO claim fails to state a cause of action and even if it did, it is barred by the applicable statute of limitations.

The allegations in this case date back to November 19, 2010 when a state court foreclosure action was filed by SunTrust Mortgage, Inc. ("SunTrust") seeking to foreclose property owned by Plaintiff and his wife. During the pendency of the foreclosure action Plaintiff (and his wife) filed a chapter seven bankruptcy petition in the Northern District of Florida. Prior to the filing of the chapter seven bankruptcy petition, on July 31, 2012, SunTrust obtained a final judgment of foreclosure. SunTrust then obtained relief from stay in the bankruptcy proceeding and proceeded with the foreclosure on the property on or after February 14, 2013.

2

Plaintiff claims that one or more of the attorneys filed a "counterfeit" note/mortgage in the foreclosure proceedings on behalf of Suntrust and as a proof of claim in the chapter seven bankruptcy proceeding. Plaintiff says the note/mortgage was counterfeit because it lacked a proper endorsement. Despite Plaintiff's challenges to the note/mortgage the state court judge granted the final judgment of foreclosure and the bankruptcy court thereafter granted relief from stay so that the foreclosure sale of the property could proceed.

Plaintiff alleges in his second amended complaint his property should not have been foreclosed because of the lack of endorsement on the note/mortgage, an improper assignment of the note/mortgage, improper service of process, and lack of a proper motion to amend. The state court judge presiding over the foreclosure ultimately entered a final judgment of foreclosure on July 12, 2012 in favor of Suntrust. According to Plaintiff, the final judgment of foreclosure is the subject of an appeal pending in the Florida First District Court of Appeal ("First DCA"). (ECF No. 22 at 21.)

Plaintiff alleges the attorneys for SunTrust committed fraud by filing counterfeit securities documents with the state court in violation of 18 U.S.C. § 1519. Plaintiff also claims the state court judges knowingly

violated multiple rules under the Florida Rules of Civil Procedure and the

Florida Rules of Judicial Administration and proceeded with the foreclosure

proceedings absent jurisdiction, thereby violating Plaintiff's rights under §

1983. Plaintiff also contends that the judges' wrongful actions violate 18

U.S.C. § 242. Finally, without any allegations supporting a conspiracy,

Plaintiff alleges Defendants conspired to commit racketeering through

fraud, extortion, and obstruction of justice by filing fraudulent/counterfeit

documents in the bankruptcy/foreclosure proceedings. As relief, Plaintiff

seeks,

> a Declaratory Judgment and Order holding[:] (1) the Proof of
> Claim by Defendants be disallowed and expunged; (2) the
> alleged lien of Defendants on Plaintiff's Premises should be
> declared void under 11 U.S.C. § 506(d); (3) awarding [Plaintiff]
> treble damages, attorneys' fees, costs, expenses and
> disbursements[;] (4) Imposing monetary sanctions of
> Defendants; (5) and for such other and further relief as to the
> Court may [d]eem just and proper.

(*Id.* at 26.)

The second amended complaint suffers from fundamental flaws that

cannot be cured through amendment. The primary problem with Plaintiff's

claim is that he is attempting to undo the final judgment of foreclosure. An

attempt to challenge the state court action before the appeal is finalized is

improper and is barred by the *Younger* abstention doctrine. A federal

court's obligation to hear and decide a case coexists with Congress'
manifest "desire to permit state courts to try state cases free from
interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971).
"*Younger* . . . and its progeny espouse a strong federal policy against
federal-court interference with pending state judicial proceedings absent
extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden
State Bar Ass'n*, 457 U.S. 423, 431 (1982). Extraordinary circumstances
warranting abstention under *Younger* exist in three types of proceedings:
(1) ongoing state criminal prosecutions; (2) certain civil enforcement
proceedings; and (3) pending "civil proceedings involving certain orders . . .
uniquely in furtherance of the state courts' ability to perform their judicial
functions." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013)
(quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New
Orleans*, 491 U.S. 350, 368 (1989)). If the court finds one of these three
exceptional circumstances present, the Court should consider three
additional factors in determining whether abstention is appropriate.
*Middlesex Cty.*, 457 U.S. at 432. These additional factors, known as
*Middlesex* factors, include whether "there is (1) an ongoing state judicial
proceeding that (2) implicates important state interests and (3) provides an

adequate opportunity to raise federal challenges." *Barone v. Wells Fargo Bank, N.A.*, No. 16-16079, 2017 WL 4179820, at *4 (11th Cir. Sept. 21, 2017) (citing *Sprint*, 134 S. Ct. at 593).

Plaintiff's claims in this case—which seek to overturn and nullify the state foreclosure judgment—fall within the third category of exceptional circumstances warranting abstention under *Younger*.

Relevant to the *Middlesex* factors, Plaintiff alleges he is currently challenging the final judgment of foreclosure in the First DCA. Courts have concluded that state foreclosure proceedings implicate important state interests. *See, e.g.*, *Doscher v. Menifee Circuit Court,* 75 F. App'x 996, 997 (6th Cir. 2003) (affirming district court's application of *Younger* abstention doctrine, finding important state interest in mortgage foreclosure); *Barberi v. New Century Mortg. Corp.*, No. 3:12cv435/MCR/EMT, 2013 WL 1197732, at *3 (N.D. Fla. Feb. 20, 2013) (finding second *Middlesex* factor met because state mortgage foreclosure was ongoing at the time plaintiff filed complaint); *Sergeon v. Home Loan Center, Inc.*, No. 3:09–CV–01113–J–32JBT, 2010 WL 5662930, at *2–4 (M.D. Fla. Oct. 26, 2010), *report and recommendation adopted*, 2011 WL 308176 (M.D. Fla. Jan. 27, 2011) ("Florida has an important state interest in determining

6

disputes that affect title to Florida real estate, including mortgage foreclosure actions, and in resolving such controversies unimpeded by federal interference").

Notably, Plaintiff not only had the opportunity to raise his challenges pertaining to the alleged deficiencies in the state court foreclosure proceeding, but he also has the chance—and is—challenging the foreclosure proceedings on appeal. Therefore, under *Younger* this Court is barred from entertaining Plaintiff's challenges to the final judgment of foreclosure.[2]

Independent of the *Younger*-bar, Plaintiff cannot proceed with his claims against the state circuit court judges because those claims are barred by the doctrine of absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978) ("[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when

---

[2] To the extent that the appeal before the First DCA has been concluded and resolved against Plaintiff, he cannot challenge the foreclosure judgment in federal court because such a challenge is barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 554 U.S. 280 (2005) ("*Rooker-Feldman* . . . is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'")*; Alvarez v. Attorney Gen. for Fla.,* 679 F. 3d 1257, 1262 (11th Cir. 2012) (the *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments").

such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. . . . . A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"); *Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("judicial immunity is an immunity from suit, not just from ultimate assessment of damages"); *Jenkins v. Clerk of Ct., U.S. Dist. Court, S. Dist. of Fla.*, 150 F. App'x 988, 990 (11th Cir. 2005) ("Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process."); *In re Certification of Need for Additional Judges*, 29 So. 3d 1110, 1112–13 (Fla. 2010) ("Magistrates support the adjudicatory process in the trial courts by performing certain quasi-judicial functions that are routine, computational, or managerial in nature under the authority of the court."). Plaintiff's conclusory assertion that the state circuit court judges lacked jurisdiction because they allegedly violated various rules fails to suggest plausibly that the judges acted in the clear absence of all jurisdiction. *See Stump*, 435 U.S. at 355–57.

Additionally, Plaintiff's claims against the various attorneys for violating § 1519 fails to state a cause of action because 18 U.S.C.§ 1519 is

a criminal statute and does not give rise to a civil cause of action.

Finally, to the extent Plaintiff attempts to bring a civil RICO claim under 18 U.S.C. § 1964, Plaintiff has failed to allege a RICO cause of action. And in any event even if he had Plaintiff's RICO claim is barred by the statute of limitations.

In relevant part 18 U.S.C. § 1962 provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.
>
> Although Plaintiff fails to specify which subsection of § 1962

Defendants allegedly violated, Plaintiff has failed to allege a plausible claim

that Defendants violated any of the subsections.

> Subsections (a), (b), and (c), all require a "pattern of racketeering."
>
> In order to prove a pattern of racketeering in a civil . . . RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity. *. . . .* A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290–91 (11th Cir. 2010)

(internal citations and quotations omitted). Plaintiff has not alleged that

Defendants committed at least two racketeering predicates that are

related. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity").

Although Plaintiff says Defendants violated various sections of title 18,

none of those qualify as title 18 predicate acts under § 1961(1).

10

Moreover, while Plaintiff contends that one or more of the attorneys filed a "counterfeit" note/mortgage in the foreclosure proceedings on behalf of Suntrust and in support of the proof of claim in the chapter seven bankruptcy proceeding (which presumably could constitute an "offense involving fraud connected with a case under title 11") Plaintiff has not alleged a second offense involving fraud connected with a case under title 11. *See id.* ("racketeering activity" includes "any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title)").

Further, even assuming Plaintiff had alleged two predicate acts, he has not alleged that those predicate acts amount to or pose a threat of continued criminal activity. The alleged fraud in this case occurred on one occasion, in one case. This is wholly insufficient to allege a continued criminal activity or "a series of related predicates extending over a substantial period of time." *Am. Dental Ass'n,* 605 F.3d at 1291.

Plaintiff's allegations, liberally construed also do not plausibly suggest the existence of an "enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." *See* § 1962(a)–(c) (each involving an "enterprise which is engaged in, or the

11

activities of which affect, interstate or foreign commerce"). Under §

1961(4), an "enterprise" can be "any individual, partnership, corporation,

association, or other legal entity, and any union or group of individuals

associated in fact although not a legal entity."

Plaintiff has not alleged that Defendants used or invested any income

derived from a pattern of racketeering activity in acquisition of any interest

in, or the establishment or operation of, any enterprise under § 1962(a), or

acquired or maintained any interest in or control in an enterprise under §

1962(b). He also has not alleged that Defendants were employed by or

associated with any enterprise under § 1962(c). Under § 1962(c), the same

entity cannot serve both as the RICO "enterprise" and as a defendant in

the same action. *Anatian v. Coutts Bank*, 193 F.3d 85, 88–89 (2d Cir.

1999). Plaintiff therefore cannot allege that the "enterprise" under § 1962(c)

was either of the named entities—Suntrust or MERS—and there is no

suggestion that all of the individual defendants were either employed by or

associated with any other "enterprise" in this case "engaged in, or the

activities of which affect, interstate or foreign commerce."[3] Merely alleging

_____

[3] Even if the RICO claims against Suntrust and MERS were dismissed, there is
no suggestion that the remaining individual defendants were all employed by or
associated with Suntrust or MERS. Furthermore, even assuming the alleged
"enterprise" in this case was the law firm for which certain individual attorney
defendants worked, and assuming Plaintiff only brought his RICO claim against those

that people worked together or were associated with each other is insufficient to state a claim under § 1962(c).

Plaintiff claim under § 1962(d) for conspiracy to commit a RICO violation also fails. "To be guilty of conspiracy . . . parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law." *United States v. Vaghela*, 169 F.3d 729, 732 (11th Cir. 1999). Thus, "[i]f the underlying cause of action is not viable, the conspiracy claim must also fail." *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004). As discussed above, Plaintiff has not alleged a plausible claim that Defendants committed a substantive RICO violation. Plaintiff's conspiracy claim therefore also fails. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (district court properly dismissed RICO conspiracy claim because complaint failed to state a substantive RICO claim).

Most notably, however, even if Plaintiff had alleged a plausible civil RICO claim—which he has not— Plaintiff's RICO claim is barred by the applicable statue of limitations. Civil RICO claims are subject to a four-year

---

individual attorney defendants, Plaintiff's RICO claim would fail for the other reasons set forth herein.

statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *Lehman v. Lucom*, 727 F.3d 1326 (11th Cir. 2013). The time period "begins to run when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001).

The conduct Plaintiff complains of in this case is the filing of an allegedly fraudulent note/mortgage more than six years ago in 2012 in the state court foreclosure proceeding. The claimed injury to Plaintiff is the loss of his property, based on the foreclosure judgment entered on July 31, 2012 and subsequent sale of the his property. Plaintiff therefore knew of both the challenged conduct (the filing of the fraudulent note/mortgage) and the injury (the final judgement of foreclosure) on—at the latest—July 31, 2012.  The four year statute of limitations for any viable RICO claim would have expired four years later on July 31, 2016. Plaintiff did not initiate this action until August 9, 2017—more than one year past the expiration of the statute of limitations.

Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend a complaint "should be freely given." *See* Fed.

14

R. Civ. P. 15(a). Under *Foman*, however, a district court may properly deny leave to amend the complaint when such amendment would be futile. *Foman*, 371 U.S. at 182. Because, even liberally construed, the facts alleged do not suggest that Plaintiff could amend his complaint to assert any cognizable claims for relief in this Court, the Court concludes that amendment of the complaint would be futile. *See Foman*, 371 U.S. at 182.

Accordingly, it is respectfully **RECOMMENDED** that this case be **DISMISSED** based upon the *Younger* abstention doctrine and for failure to state a claim upon which relief may be granted.

**IN CHAMBERS**, this 8th day of January 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**